IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Myriam Fejzulai and Monica Moore, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> Sam's West, Inc.; Sam's East, Inc.; and Wal-Mart Stores, Inc. (all d/b/a "Sam's Club" and/or "Sam's Wholesale Club"), <br><br> Defendants. | ) Civil Action No.  6:14-cv-03601-BHH <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION
FOR CERTIFICATION OF A SETTLEMENT CLASS
AND FINAL APPROVAL OF SETTLEMENT**

Plaintiffs, by and through their counsel, hereby submit this memorandum in support of their Motion for Certification of a Settlement Class and Final Approval of Settlement, pursuant to Federal Rules of Civil Procedure 23(b)(3) and 23(e).

**I.     STATUS OF THE SETTLEMENT**

Following the grant of preliminary approval by this Court, the parties implemented their notice obligations in conjunction with the notice administrator, RG/2 Claims Administration LLC ("RG2"). RG2 facilitated administration of the notice process[1] as described in Plaintiffs' Motion for Preliminary Approval filed with this Court on October

---

[1] As previously set forth at the preliminary approval hearing, and as required by the terms of the settlement, defense counsel at Greenberg Traurig, LLP separately implemented timely notice of the proposed settlement to the required government officials in October 2017. The template CAFA letter transmitted to each government official is attached as Ex. A.

20, 2017 (Dkt. No. 126-1 at 17-18), as described in the attached Declaration of Tina Chiango (*see* Ex. B), and in accordance with this Court's order (Dkt. No. 131). Additionally, pursuant to the Settlement Agreement ("Agreement"), Chiango's Declaration, and the preliminary approval order, Sam's Club has satisfied all of its advance obligations related to funding and implementation via RG2.

The reaction of the class to this settlement demonstrates the quality of the relief. No class members have yet opt-outed from the settlement despite more than 77,000 visits to the website by over 67,000 unique visitors. *See* Ex. B at ¶ 6. Of those 67,000 unique visitors, more than 7500 claims have been received to date with weeks remaining until the claims period expires on March 26, 2018. *Id*. at ¶ 11. The parties now request that this Court again find that the requirements for certification have been met and issue a grant of final approval of this settlement.

## II.    THE PROPOSED CLASS MEETS ALL ELEMENTS FOR CLASS CERTIFICATION.[2]

A "'District Court has wide discretion in deciding whether or not to certify a proposed class,' and its decision may be reversed 'only for abuse of discretion.'" *In re A.H. Robins Co., Inc.*, 880 F.2d 709, 728 (4th Cir. 1989) (quoting *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 471-72 (5th Cir. 1986)), *abrogated by Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997). "[T]he court must accept the allegations made in support of certification as true, and not undertake an examination of the merits of the case." *Cuming v. S.C. Lottery Comm'n*, No. 3:05-cv-03608-MBS, 2008 WL 906705, at *2 (D.S.C.

---

[2] Defendants do not oppose certification of a settlement class solely for purposes of settlement.

Mar. 31, 2008). Plaintiffs do, however, bear the burden of satisfying the certification requirements of Fed. R. Civ. P. 23. *Id.*

### A. The Proposed Class Meets All Prerequisites for Class Certification.

In order to comply with Rule 23(a), Plaintiffs must show:

(1) The class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

As an initial matter, the Court should "consider the definition of the class itself when determining the appropriateness of class certification[,]" *Kirkman v. N.C. R.R. Co.*, 220 F.R.D. 49, 53 (M.D.N.C. 2004), in order to determine whether it is "precise, objective, and ascertainable . . . [and whether it] captures all individuals or entities necessary for the efficient and fair resolution of common questions of fact and law in a single proceeding." BARBARA J. ROTHSTEIN & THOMAS E. WILLGING, MANAGING CLASS ACTION LITIGATION: A POCKET GUIDE FOR JUDGES 9 (Federal Judicial Center 2009).

The Settlement proposes the following class definition: all those persons who were members of Sam's Club at any time during the Settlement Class Period and purchased from Sam's Club certain "Fresh Products" (as defined in the Agreement) and returned such product to Sam's Club. The definition excludes any persons who timely and properly request exclusion from the Settlement. As set forth below, this proposed class meets all prerequisites for class certification under Fed. R. Civ. P. 23(a).

3

### a) **The Class Is So Numerous That Joinder of All Members Is Impracticable.**

Rule 23(a)(1) states that the numerosity requirement is met if "joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The Fourth Circuit has consistently held the "application of [Rule 23] is to be considered in light of the particular circumstances of the case[,]" *Cypress v. Newport News Gen. & Nonsectarian Hosp. Ass'n*, 375 F.2d 648, 653 (4th Cir. 1967), and, accordingly, it has not set a bright-line rule on numerosity. *See Holsey v. Armour & Co.*, 743 F.2d 199, 217 (4th Cir. 1984) (holding that between forty-six and sixty members of a class was a sufficient number to satisfy the Rule 23(a)(1) numerosity requirement for class certification), *cert. denied*, 470 U.S. 1028 (1985); *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984) (holding that seventy-four members of a class was a sufficient number to satisfy the Rule 23(a)(1) numerosity requirement for class certification), *cert. denied*, 469 U.S. 827 (1984). In light of Sam's Club's significant presence in consumer commerce, and the thousands of claims received to date, Plaintiffs easily satisfy the Rule 23(a)(1) numerosity requirement.

### b) **There Are Questions of Law and Fact Common to the Class.**

Fed. R. Civ. P. 23(a)(2) requires a showing that questions of law or fact are common to the class. It does not require that *all* such issues in the litigation be common, nor that common questions predominate, but only that common questions exist. *See Holsey*, 743 F.2d at 216-17; *see also Int'l Woodworkers of Am. v. Chesapeake Bay Plywood Corp.*, 659 F.2d 1259, 1269-70 (4th Cir. 1981) (stating that differences in the manner or degree of commonly-caused injuries do not preclude certification). Indeed, a single common question has been found to satisfy Rule 23(a)(2). *See*, *e.g.*, *Simon v. Westinghouse Elec. Corp.*, 73 F.R.D. 480, 484 (E.D. Pa. 1977). "A common question is one that can be

resolved for each class member in a single hearing. . . ." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006).

While courts have held that "commonality" exists under many different circumstances, there are common questions if the claims of the class arise from the same underlying set of facts or circumstances. *Holsey*, 743 F.2d at 216-17. In the present action, the claims of Plaintiffs and the proposed class present a number of common questions of law and fact, including, but not limited to:

    (a)    Whether the Sam's Club Membership Agreement constitutes a contract between Sam's Club and its members;

    (b)    Whether the Sam's Club's Membership Agreement contains a provision that its members receive a 200% refund upon the return of a Fresh Product;

    (c)    Whether Sam's Club breached its Membership Agreement by failing to refund members the guaranteed 200% refund upon the return of a Fresh Product; and

    (d)    Whether Sam's Club's failure to honor its Membership Agreement by failing to refund members the guaranteed 200% refund constitutes a breach of contract.

In sum, Plaintiffs' allegations, for the purpose of this Agreement, describe a common nucleus of operative facts surrounding Sam's Club's failure to properly refund its members the guaranteed 200% refund for the return of Fresh Products pursuant to its Membership Agreement. The fundamental question—whether Sam's Club breached the contract in failing to provide a 200% refund to members that returned a Fresh

Product—is a common question on which the entire outcome of the case turns and, accordingly, the threshold for commonality has been met here.

### c) The Representative Plaintiffs' Claims Are Typical of the Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Decisions construing Rule 23(a)(3) have given it a liberal construction, holding that a claim is typical if it arises from the same events, practices, or course of conduct that gives rise to the claims of other class members, and if the claims are based on the same legal theories. *See*, *e.g.*, *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523-26 (6th Cir. 1976), *cert. denied* 429 U.S. 870 (1976); 1 H. Newberg, *Newberg on Class Actions* § 3:13 (2002) (cases collected). "The representative party's interest in prosecuting his own case must simultaneously tend to advance the interests of the absent class members . . . . [but] [t]hat is not to say that typicality requires that the plaintiff's claim and the claims of class members be perfectly identical or perfectly aligned." *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006).

Here, the representative parties' claims are typical of the class as a whole. Plaintiffs and each member of the proposed class were or are members of Sam's Club who purchased and returned a Fresh Product to Sam's Club.[3] Further, Plaintiffs' claims arise from the same practices or course of conduct that gives rise to the claims of other class members. Namely, Plaintiffs and the class's claims arise from Sam's Club's practice or course of conduct of routinely failing to pay its members the guaranteed

---

[3] The California class representative, Morgan Chikosi, is identified in the Agreement.

200% Fresh Product refund. These claims are based on the same legal theories. Plaintiffs have thus satisfied the typicality requirement.

### d) The Representative Plaintiffs Will Fairly and Adequately Protect the Interests of the Class.

The final requirement of Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied in large part by the absence of any disabling antagonism or intra-class conflict, as demonstrated from the preceding discussion of the "commonality" and "typicality" requirements. Additional considerations more particularly associated with Rule 23(a)(4) include the vigor with which the representative party can be expected to assert and defend the interests of the class and the qualifications of class counsel. 1 H. Newberg, *Newberg on Class Actions* § 3:21; *see also Sosna v. Iowa*, 419 U.S. 393, 403 (1975); *Thomas v. Louisiana-Pacific Corp.*, 246 F.R.D. 505, 509 (D.S.C. 2007).

Here, Plaintiffs have and will continue to fairly and adequately protect the interests of the class. All of the class representatives have assisted Class Counsel in the investigation and litigation of this case, have submitted to depositions, and have cooperated with written discovery. Plaintiffs' interests here are not antagonistic to those claims asserted on behalf of the class. Plaintiffs filed this action to recover the refund to which they are entitled under the Membership Agreement and to force Sam's Club to adhere to the promises contained in its Membership Agreement. These claims are coextensive with those of the putative class members.

Moreover, Plaintiffs' counsel have extensive experience in class action and other complex litigation and are well-suited to prosecute the claims. Class Counsel and Plaintiffs share the same interest as class members in maximizing relief for the class,

and this Court should therefore find the proposed representation is in the best interest of the class.

### III. THE PROPOSED CLASS ALSO SATISFIES RULE 23(b)'s CLASS CERTIFICATION REQUIREMENTS.

In addition to meeting the requirements of Fed. R. Civ. P. 23(a), Plaintiffs' proposed class also satisfies the requirements of Fed. R. Civ. P. 23(b). Rule 23(b)(3) provides that a class action may go forward if the requirements of Rule 23(a) are met and if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b)(3). The rule gives further guidance on factors to be considered by the Court when making its superiority determination. Those factors are: (A) the individual class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A) - (D).

#### A. Questions of Law and Fact Common to the Proposed Class Members Predominate Over Individual Issues.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods.*, 521 U.S. at 623. To satisfy the predominance standard "[p]laintiffs need only show that 'common questions predominate over individual questions as to liability[,]'" even when individualized damages inquiries may be necessary. *Hunter v. Am. Gen. Life & Accident Ins. Co.*, No.

8

CA 301-5000-22, 2004 WL 5231631, at *10 (D.S.C. Dec. 2, 2004) (quoting *Gunnells v. Healthplan Servs.*, *Inc*., 348 F.3d 417, 428 (4th Cir. 2003)).  At its core, the predominance inquiry focuses upon the relationship between common and individual issues.  "When common issues present a significant aspect of the case and it can be resolved for all members of the Class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."  7A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1778 (2d ed. 1986).

In this litigation, common questions predominate over questions affecting individual class members.  As stated above, each putative class member is a Sam's Club member that purchased and returned a Fresh Product to Sam's Club.  The membership agreement is a "form contract" located on the Internet.  Further, the relevant terms of the membership agreement relating to the 200% Fresh Product refund are identical or substantially identical.  Common questions of fact or law predominate here.

### B.    The Class Action Device is the Superior Method for the Fair and Efficient Adjudication of this Matter.

Before a settlement class may be certified, the Court must also find that a class action is the superior method for the fair and efficient adjudication of the action before it.  Fed. R. Civ. P. 23(b)(3).  "A class action may be superior if class litigation of common issues will reduce litigation costs and promote greater efficiency, or if no realistic alternative exists."  *Connor v. Automated Accounts, Inc*., 202 F.R.D. 265, 271-72 (E.D. Wash. 2001).

Here, it can be presumed that the putative class members have no interest in individually controlling the prosecution of separate actions given the nature and size of the claims at issue.  *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("only

9

a lunatic or a fanatic sues for $30"). "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative—no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied—to no litigation at all." *Id*. It is only as a class action that these claims could ever be brought. A class action is not only the superior method, it is the only viable method to redress class members' claims.

This fact is borne out by the state of litigation on this very issue of the 200% guarantee. Plaintiffs are not aware of any individual cases on file relating to the claims at issue here. Nor would such individual litigation prove logical given the relatively small size of an individual claim, especially given the considerable litigation that has occurred here. Individual litigation is thus unlikely to prove superior to a class remedy when the costs and burdens of litigation are so pronounced.

Plaintiffs also note that the imposition of the class device here, in this forum, will allow the Court to conserve valuable judicial resources and achieve economies of time, effort, and expense, assuring uniformity and avoiding repetitive actions. It makes little sense for courts to hold repeated individual trials on the same core liability question of whether Sam's Club breached its membership agreement in failing to refund its members 200% upon the return of Fresh Products. That core issue is only susceptible to one correct answer, making class certification particularly appropriate.

**IV.   THIS COURT SHOULD GRANT FINAL APPROVAL FOR A REASONABLE SETTLEMENT THAT FACES SUBSTANTIAL RISKS IF LITIGATION CONTINUES.**

This Court has already satisfied the first step of the two-step settlement approval process by reviewing the settlement for preliminary approval purposes and for any obvious deficiencies in the Agreement. *See Horton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*

855 F. Supp. 825, 827 (E.D.N.C. 1994); *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); MANUAL FOR COMPLEX LITIGATION (FOURTH) §§ 21.632, 21.634 (2004). At this stage, the final fairness hearing, the Court is now asked to consider whether the proposed settlement is fair, reasonable, and adequate. *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158-59 (4th Cir. 1991) (setting forth fairness and adequacy factors to be considered for approval of class settlement).

### A. This Settlement was Reached as the Result of Arms' Length Negotiations.

Courts in the Fourth Circuit look to the fairness factors set forth in *Flinn*[4] and *Jiffy Lube* in determining whether there is probable cause to notify the class. *See In re: Serzone Prods. Liab. Litig.*, MDL No. 1477, 2004 WL 2849197, at *2-3 (S.D. W. Va. Nov. 18, 2004) (applying *Jiffy Lube* factors in preliminarily approving class settlement); *see also In re Mid-Atlantic Toyota*, 564 F. Supp. at 1383-85. The fairness factors concern whether there has been arms' length bargaining. *See id.* at 1383, 1385; *South Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 339 (D.S.C. 1991). In establishing the arms' length character of the settlement, courts consider (i) the posture of the case at the time of settlement, (ii) the extent of discovery that has been conducted, (iii) the circumstances surrounding the negotiations, and (iv) the experience of counsel. *See In re Jiffy Lube*, 927 F.2d at 159; *South Carolina National Bank*, 139 F.R.D. at 338-39.

The fairness factors, as applied to the present case, favor approval of the proposed settlement. First, collusion is absent. A proposed class action settlement is considered presumptively fair where, as here, there is no evidence of collusion and the parties, through

---

[4] *Flinn v. FMC Corp.*, 528 F.2d 1169 (4th Cir. 1975).

11

capable counsel, have engaged in arm's length negotiations. *See id.* ("In assessing the fairness and adequacy of a proposed settlement, there is a strong initial presumption that the compromise is fair and reasonable.") (internal quotations and citation omitted); *see also Manual, supra*, §§ 21.61, 21.62. Class Counsel have engaged in protracted negotiations where the outcome was uncertain. It was only after the completion of briefing on Plaintiffs' class certification filing, extensive discovery, briefing on Plaintiffs' proffered expert, and summary judgment briefing in California, that the parties reached the proposed Agreement with the assistance of a mediator.[5]

Next, Class Counsel were fully and sufficiently informed to vigorously advocate on behalf of the class. In addition to the formal discovery that the parties have undertaken, Class Counsel conducted extensive factual investigation and legal analysis to obtain sufficient information to weigh the benefits of the proposed Agreement against the risks of continued litigation.

### B. The Proposed Settlement Falls Within the Range of Possible Approval.

Following preliminary approval, a district court must still apply adequacy factors at the final fairness hearing. Courts should consider the adequacy of the settlement relief to determine whether the compromise falls within the range of possible approval. *See In re Serzone Products*, 2004 WL 2849197, at *2-3 (applying *Jiffy Lube* factors in preliminarily approving class settlement); *see also Mid-Atlantic Toyota*, 564 F. Supp. at 1385. Like the fairness factors, courts in the Fourth Circuit weigh the adequacy factors

---

[5] In fact, there was an earlier mediation that proved unsuccessful, and the parties elected against further mediation until class certification discovery and briefing had concluded. The class certification hearings in California and South Carolina, as well as the summary judgment hearing in California, were set to occur within days of the Agreement's core terms having been reached.

articulated in *Flinn* and *Jiffy Lube*: (i) the relative strength of the plaintiffs' case on the merits; (ii) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial; (iii) the anticipated duration and expense of additional litigation; (iv) the solvency of the defendants and the likelihood of recovery of a litigated judgment; and (v) the degree of opposition to the settlement. *See In re Jiffy Lube*, 927 F.2d at 159; *Flinn*, 528 F.2d at 1173-74.

First, the strength of Plaintiffs' case, balanced against the assured relief under the proposed Agreement, weighs in favor of the adequacy of the compromise. Plaintiffs' ability to prevail on the merits of this litigation, like all contested matters, is uncertain. Sam's Club vigorously opposed class certification of this case, including issues relating to the ascertainability of the class and the admissibility of Plaintiffs' expert. Plaintiffs recognize the potential difficulties and risks of maintaining this case as a class action if litigation were to proceed, and these risks have been outlined to this Court in detail in the various papers filed in this action by Sam's Club. This proposed Agreement confers relief that would not be achievable if Sam's Club prevails at class certification, on their anticipated dispositive motion practice, at trial, or on appeal.

Second, the relief afforded under the proposed Agreement correlates adequately with the claims of damages and losses asserted by Plaintiffs. It is Class Counsel's opinion that the relief provides objectively superior results: class members will receive a Sam's Club gift card for at least $10.00,[6] which is within the range of an average return of a Fresh

---

[6] Pursuant to the Agreement, in the event that the combined total of the Cash Component plus the aggregate Gift Card Amount claims by all Settlement Members is less than the Floor, the Gift Card Amount available to each Settlement Class Member shall be increased on a pro-rata basis so that the combined total of the Cash Component plus the aggregate

13

Product. According to data provided by Sam's Club during class discovery for four states, the average return value for a Fresh Product, excluding daily excess and non-fresh products,[7] is as follows:

| | |
|---|---|
| California: | $9.23 |
| Georgia: | $11.68 |
| South Carolina: | $11.47 |
| Tennessee: | $11.28 |

Accordingly, it is Class Counsel's opinion that the relief provided to the class members is fair, adequate, and reasonable.

Third, there can be no serious debate that this litigation could continue unabated at great expense and delay for the class. The outcome of future dispositive motion practice, the class certification outcome, and the trial of this matter would certainly be the subjects of an appeal to the Fourth Circuit. The class certification outcome, by itself, could trigger Fourth Circuit review pursuant to Fed. R. Civ. P. 23(f). It is very difficult to conclude that this litigation can be resolved efficiently and at reasonable expense if the settlement does not now meet with the Court's approval.

Fourth, it is difficult for Class Counsel to conclude that the class can achieve a similar or better result should the settlement fail to move forward. As mentioned earlier, there are numerous, potentially fatal, hurdles that Plaintiffs would be required to clear during the various remaining phases of this case. There is no purpose to be served by litigating further given the negotiated relief, especially when considering the remaining hurdles in this case.

---

Gift Card Amount claims by all Settlement Class Members equals the Floor. *See* Agreement § 6.2.2.3.

[7] The raw data for these numbers was provided to the Court at class certification in the report of Dr. Stacey Mumbower.

Finally, Class Counsel also point out that despite the wide reach of notice, which includes tens of millions of impressions, published notice in two national newspapers, and more than 67,000 unique visitors to the website, no opt outs or objections have been received to date. *See* Ex. B.

### C. The Court Should Approve Incentive Awards to the Class Representatives in the Amount of $5,000 Each.

The class representatives in the South Carolina and California actions, Myriam Fejzulai, Monica Moore, and Morgan Chikosi, have ably assisted Class Counsel in the investigation and litigation of this class action. The class representatives submitted to depositions and cooperated fully in other discovery. "Serving as a class representative is a burdensome task and it is true that without class representatives, the entire class would receive nothing." *Robinson v. Tr. Council of Wateree Cmty. Actions, Inc.*, CA: 3:11-CV-00313-CMC, 2012 U.S. Dist. LEXIS 129069, at *31-32 (D.S.C. Sept. 10, 2012)[8] (quoting *Kay Co. v. Equitable Prod. Co.*, 749 F. Supp. 2d 455, 472 (S.D. W. Va. 2010)). Defendants have agreed not to oppose incentive awards of greater than $5,000.00 each for the representatives, and Class Counsel recommend that such awards be approved by the Court here for the representatives' service and cooperation.

## VIII. CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court enter an Order certifying the settlement class, and finally approving the settlement.

---

[8] No Westlaw cite is available for *Robinson*.

15

Respectfully submitted,

RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC

/s/ T. Christopher Tuck
T. Christopher Tuck, ID No. 9135
E-mail: ctuck@rpwb.com
RICHARDSON, PATRICK, WESTBROOK & BRICKMAN, LLC
1037 Chuck Dawley Blvd., Bldg. A
Mount Pleasant, SC  29464
(843) 727-6500
Terry E. Richardson, Jr., ID No. 3457
E-mail: trichardson@rpwb.com
Christopher J. Moore, ID No. 10445
E-mail: cmoore@rpwb.com
P.O. Box 1368
Barnwell, SC  29812
(803) 541-7850

-and-

William D. Herlong, ID No. 5223
E-mail: William@HerlongLaw.com
THE HERLONG LAW FIRM, LLC
1421 Augusta Street
P.O. Box 8217
Greenville, SC  29604-8217
(864) 238-5111

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of March, 2018, I caused the foregoing document to be electronically filed with the Clerk of the Court using CM/ECF, which will provide electronic notice of such filing to all counsel of record.

s/ T. Christopher Tuck
T. Christopher Tuck